UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| BILLY W. B., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:22-CV-070-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI, *Commissioner of* | ) | **MEMORANDUM OPINION** |
| *Social Security*, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Commissioner of Social Security denied Plaintiff Billy W. B.'s application for Disability Insurance benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). [R. 1]. Both Plaintiff [R. 12] and the Commissioner [R. 16] have filed their respective briefs. For the reasons that follow, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. The Court will therefore affirm the Commissioner's decision.

I.      **Background**

Plaintiff is 56 years old and has a high school education. *See* [R. 9-1, Transcript of Administrative Record (hereinafter, "Administrative Transcript" or "Tr.") (attached to Commissioner's Answer as Ex. 1), at 246, 289]. He is presently unemployed but has past relevant work experience as a dump truck driver and a heavy equipment operator. [Tr. 61]. On March 6, 2020, Plaintiff protectively filed an application for Disability Insurance benefits ("DIB") under Titles II and XVIII of the Social Security Act, 42 U.S.C. § 1382c (the "Act"). [Tr. 246]. He alleged disability beginning on May 29, 2015, due to degenerative disc disease, sciatica, bulging disc and

impingement of disc, nerve damage, and chronic pain. [Tr. 288].

Plaintiff's application was denied initially and upon reconsideration. [Tr. 107, 122, 143, 148]. At Plaintiff's request, a hearing was held February 5, 2021 before Administrative Law Judge Karen Jackson ("ALJ Jackson"). [Tr. 68–87]. During the hearing, Plaintiff amended his alleged onset date to February 1, 2019. [Tr. 72]. ALJ Jackson issued an unfavorable decision on March 30, 2021. [Tr. 50–67].

In making her determination, ALJ Jackson applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, ALJ Jackson found Plaintiff did not engage in substantial gainful activity at any point from May 29, 2015, Plaintiff's original alleged onset date, and the date he was last insured under Title II. [Tr. 56]. Second, she found Plaintiff has the severe impairments of degenerative disc disease (DDD) of the cervical and lumbar spine; right shoulder pain; diabetes mellitus with peripheral neuropathy; cubital tunnel; and obesity. *Id.* Third, ALJ Jackson found that none of Plaintiff's impairments or combination of impairments meet or medically equal the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* ALJ Jackson then determined Plaintiff has the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. 404.1567(b), with the following limitations:

> He can occasionally climb ramps and stairs, but cannot climb ladders or scaffolds. He can frequently kneel and crouch; occasionally stoop, but he cannot crawl. He can frequently reach overhead with the bilateral upper extremities, and frequently handle and finger with the non-dominant right upper extremity. He is to avoid concentrated exposure to vibration, pulmonary irritants, and moving mechanical parts, and he is to avoid all unprotected heights.

[Tr. 57].[1] Fourth, ALJ Jackson found Plaintiff unable to perform any of his past relevant work.

[1] Plaintiff previously filed an application for disability insurance benefits in January of 2016, which was also denied

[Tr. 61]. Fifth and finally, considering Plaintiff's age, education, work experience, and RFC, ALJ Jackson determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [Tr. 62].

Based on this evaluation, ALJ Jackson concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any point since his initial onset date. [Tr. 63]. Plaintiff sought administrative review of the decision, and the Appeals Council declined review on June 7, 2022. [Tr. 1]. At that point, ALJ Jackson's decision became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. [R. 1].

## II.   Standard of Review

"When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may 'not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.'" *McNabb v. Colvin*, No. 3:16CV-00298-DW, 2017 WL 489421, at *2 (W.D. Ky. Feb. 6, 2017) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013). Substantial evidence exists

---

at the agency level. On review, Administrative Law Judge Ryan Johannes ("ALJ Johannes") found Plaintiff capable of performing a restricted range of light work and, therefore, not disabled. [Tr. 88–106]. Thus, in his subsequent claim, because Plaintiff presented no compelling evidence of new or changed conditions, in accordance with *Drummond v. Commissioner*, 126 E3d 837 (6th Cir. 1997), ALJ Jackson "[g]enerally adopted the prior residual functional capacity" formulated by ALJ Johannes. [Tr. 60]. Indeed, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative Law Judge with respect to the claimant's residual functional capacity where no evidence warrants significant changes. *See Drummond*, 126 E3d at 843.

"when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (same). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

### III.    Analysis

Plaintiff raises two challenges to ALJ Jackson's decision. First, he alleges ALJ Jackson failed to properly address the medical evidence of record in determining his residual functional capacity. [R. 12-1, pp. 2, 7]. Plaintiff further suggests ALJ Jackson erred in failing to consider his amended onset date when analyzing the relevant disability period. *Id.* In response, the Commissioner argues ALJ Jackson adequately "discussed the objective medical evidence and Plaintiff's treatment history," which "failed to corroborate Plaintiff's allegations of disabling impairments." [R. 16, p. 5]. Moreover, the Commissioner notes ALJ Jackson "explicitly recognized in her decision" that Plaintiff amended his alleged onset date to February 1, 2019 during the administrative hearing. *Id.* at 9.

#### A.  Amended Onset Date

Taking Plaintiff's arguments out of turn, the Court turns first to ALJ Jackson's consideration of the relevant disability period. Plaintiff suggests ALJ Jackson's failure to properly define the disability period based on his amended onset date "is a significant mistake in this matter" and, consequently, "the matter should be remanded for the ALJ to properly address the issue if the Claimant amended his onset date at the hearing to February 1, 2019." [R. 12-1, pp. 7–8]. The Court observes, however, that remand is not necessary to determine *if* Plaintiff amended his onset date

4

at the hearing, as ALJ Jackson clearly acknowledged that he did. *See* [Tr. 53] ("On the record at the hearing, with advice from his attorney, the claimant amended the alleged onset date to February 1, 2019.").

Beyond this, Plaintiff argues ALJ Jackson's failure to properly consider his amended onset date was reversible error because "[a]t the time of his amended onset the Claimant would have been 52 years of age," which "is a significant difference in how the claim should have been processed by the ALJ" because "the appropriate grid rule for a person approaching advanced age" would have been applicable. [R. 12-1, pp. 8, 10]. The Court disagrees for several reasons. First, in her RFC determination, ALJ Jackson acknowledged that Plaintiff was 54 years old at the time of her decision. [Tr. 57]. ALJ Jackson again recognized Plaintiff's age between steps four and five in the sequential evaluation process when she found "claimant was born on November 23, 1966 and was 53 years old, *which is defined as an individual closely approaching advanced age*, on the date last insured." [Tr. 61] (emphasis added). Plaintiff's concern that ALJ Jackson would have assessed his claim differently based on his age at his amended onset date is therefore unfounded.

Moreover, Plaintiff's claim that ALJ Jackson should have consulted a different "grid rule" based on his amended onset date is belied by the fact that ALJ Jackson consulted a vocational expert to opine on Plaintiff's exertional capabilities, as required under the regulations. The Sixth Circuit has made clear "that the SSA may not rely on the grids alone to meet its step-five burden where the evidence shows that a claimant has nonexertional impairments that preclude the performance of a full range of work at a given level." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d at 926–27; *Damron v. Sec'y of Health and Human Servs.*, 778 F.2d 279, 282 (6th Cir.1985)). In such cases, in accordance with Social Security Ruling 83-14, an ALJ should employ "the assistance of a vocational resource." 1983 SSR

LEXIS 33, at *9–10 (1983). Here, because Plaintiff's RFC would preclude him from performing a full range of light work, *see* [Tr. 57], ALJ Jackson properly employed an impartial vocational expert to determine what jobs in the national economy Plaintiff could perform, *see* [R. 62]. This analysis would not have changed with respect to Plaintiff's amended onset date. Indeed, Plaintiff even acknowledges in his brief that during the administrative hearing, ALJ Jackson informed the vocational expert that Plaintiff "is closely approaching advanced age." [R. 12-1, p. 3]; *see also* [Tr. 83]. It is therefore clear that both ALJ Jackson and the impartial vocational expert considered Plaintiff's age in their respective assessments.

Most importantly, "[t]he onset date of disability is the first day an individual is disabled as defined by the [Social Security] Act and the regulations." SSR 83–20, 1983 WL 31249, at *1. Thus, "an onset date is relevant only when an ALJ determines that a claimant is disabled" and an ALJ does "not err in failing to consider plaintiff's correct amended onset date [where] he ultimately conclude[s] that [the plaintiff] [i]s not disabled." *Baldwin v. Colvin*, No. 14-CV-0442-CVE-TLW, 2016 WL 447497, at *3 (N.D. Okla. Feb. 4, 2016) (citing *Gutierrez v. Astrue*, 253 Fed.Appx. 725, 729 (10th Cir. 2007)); *see also Gibson v. Astrue*, No. CA 0:08-2011-HMH-PJG, 2009 WL 3757686, at *11 (D.S.C. Nov. 9, 2009) (finding harmless error where ALJ addressed the incorrect onset date but claimant "fail[ed] to establish that this error affected the outcome of the case or changed the substance of the decision in any manner"). ALJ Jackson plainly acknowledged that Plaintiff amended his onset date during the administrative hearing and appropriately considered that Plaintiff was approaching advanced age on his date last insured under Title II. Any error by ALJ Jackson in considering Plaintiff's original onset date as a starting point for the relevant disability period was therefore harmless.

### B.  Assessment of Record Evidence

The Court turns next to Plaintiff's challenges concerning ALJ Jackson's consideration of the relevant medical evidence. First, Plaintiff generally asserts that ALJ Jackson's assessment of the medical record is not supported by substantial evidence. [R. 12-1, pp. 9–10]. The Court disagrees, however, and finds that substantial evidence supports ALJ Jackson's assessment of the record and her RFC determination. In her discussion of the record evidence, ALJ Jackson acknowledged Plaintiff's "history of degenerative disc disease (DDD) of the cervical and lumbar spine, confirmed by abnormal diagnostic imaging studies showing multi-level degenerative changes, but no nerve root involvement" and his "history of right shoulder pain, cubital tunnel, and type 2 diabetes mellitus with mild to moderate peripheral neuropathy, confirmed by nerve conduction studies in March 2020." [Tr. 58]. She further noted that "[t]reatment records document complaints of fatigue; low back pain; neck pain, and right shoulder pain" and that, to address Plaintiff's pain, "doctors have prescribed appropriate medication, including narcotic pain medication." *Id.* Even so, ALJ Jackson observed that "[p]ain management treatment records from 2020 indicate his chronic pain is 'controlled partially.'" *Id.*

Continuing with her evaluation of the record evidence (and bearing on the supportability and consistency of Dr. Breeding's opinion, as addressed below), ALJ Jackson recognized "some abnormal findings on physical examination," including "pain with cervical and lumbar range of motion; reduced cervical and lumbar range of motion; cervical muscle spasm; right shoulder tenderness; decreased sensation in right hand; positive Tinel's on the right; right AC joint tenderness, and right shoulder pain with range of motion." [Tr. 58–59]. Beyond this, however, ALJ Jackson noted the "overall physical examination findings during the relevant period are within normal limits, including normal gait; normal strength; normal range of motion in the spine and all

extremities, and normal neurological status." [Tr. 59]. Lastly, ALJ Jackson pointed out that in January of 2021, Plaintiff's other treating physician, Dr. Norman Mayer, "indicated the claimant would not benefit from cervical fusion surgery and recommended continued conservative treatment." *Id.*

In addition to discussing the medical evidence of record, ALJ Jackson considered Plaintiff's daily activities in forming the RFC. ALJ Jackson acknowledged that "despite his impairments, [Plaintiff] continues to engage in a somewhat normal level of daily activity and interaction," and noted "[e]vidence, including testimony and the claimant's own reports, shows he is independent with personal care; does some household chores; drives; shops for groceries; prepares simple meals, and attends church." [Tr. 59]. As ALJ Jackson correctly observed, "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment, and his ability to participate in such activities undermines the allegations of disabling functional limitations." *Id.*

Based on this evaluation, and upon independent review of the record as a whole, the Court finds that substantial evidence supports ALJ Jackson's assessment of the medical evidence generally. Although, as Plaintiff notes at the outset of his brief, [R. 12-1, pp. 2–3], he testified at the administrative hearing concerning intense pain and exertional limitations, a claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*,

8

801 F.2d at 854. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3). ALJ Jackson complied with the regulations by considering the record as a whole, and not just Plaintiff's subjective complaints or cherry-picked medical findings, in fashioning Plaintiff's RFC. ALJ Jackson discussed the objective medical evidence, Plaintiff's treatment history, and Plaintiff's own hearing testimony. After carefully considering the entire record in this case, ALJ Jackson reasonably concluded that it failed to corroborate Plaintiff's allegations of disabling impairments.

Plaintiff also challenges ALJ Jackson's specific consideration of the findings of his treating physician, Dr. Van Breeding. [R. 12-1, pp. 9–10]. In his "Medical Assessment of Ability to Do Work-Related Activities (Physical)," Dr. Breeding opined that Plaintiff's ability to lift or carry, stand or walk, sit, reach, handle, and push or pull are affected by his impairments. [Tr. 482–83]. Dr. Breeding's assessment stated Plaintiff should never perform postural activities that involve climbing or balancing, and that he should avoid heights, moving machinery, temperature extremes, chemicals, dust, and vibration. [Tr. 483]. Plaintiff suggests ALJ Jackson failed to adequately explain the supportability and consistency of Dr. Breeding's opinion in deeming it unpersuasive. [R. 12-1, pp. 9–10]. Plaintiff suggests Dr. Breeding's findings are supported by other objective medical proof in the record, including his continued treatment with Kentucky Pain Management, his "long standing longitudinal history of treatment for his back and neck," and "objective MRI findings" showing "moderate degenerative changes in the disc spaces and uncovertebral joints." *Id.*

The new regulations for evaluating medical opinions are applicable here since Plaintiff's

claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An administrative law judge must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. 20 C.F.R. 404.1520c(c)(1)–(5). But the administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

In considering Dr. Breeding's opinion, ALJ Jackson provided the following:

In December 2020, physician, Van Breeding, M.D., completed a Medical Assessment questionnaire indicating the claimant's degenerative disc disease limits him to lifting/carrying "very little"; standing/walking a total of 2 hours in an 8-hour day; sitting a total of 2 hours in an 8-hour day; never climbing or balancing; occasionally stooping, crouching, kneeling, and crawling; limited reaching, handling, and pushing/pulling, and limited exposure to heights; moving machinery, temperature extremes, chemicals, dust, and vibration (B6F). The undersigned does not find this opinion persuasive because it is not consistent with or supported by the overall evidence of record, including the objective diagnostic testing showing only mild to moderate degenerative changes (B2F/41, 43, 58-61; B4F/3-4), as well as the mostly normal physical examination findings. (See, B2F-B3F, B5F, B7F-B9F).

[Tr. 60]. ALJ Jackson stated she did not find Dr. Breeding's opinion persuasive because it was not consistent with, or supported by, the overall record. Indeed, the records ALJ Jackson cites show consistent treatment with medication and recommendations for dietary management and exercise.

10

*See* [Tr. 364–419]. And although they document Plaintiff's complaints of neck pain and associated symptoms, including decreased mobility, *see* [Tr. 409], they also document normal findings in categories including "constitutional," "neck exam," respiratory," "cardiovascular," "abdomen," musculoskeletal," extremity," and "psychiatric," *see* [Tr. 413]. As ALJ Jackson observed, other objective evidence in the record, including these normal physical examination findings and diagnostic imaging showing only mild to moderate degenerative changes, are inconsistent with many of Dr. Breeding's findings. *See* [Tr. 60]; [Tr. 399, 401, 416, 417–18]. And, as further recognized by ALJ Jackson, Dr. Breeding's rather extreme findings are contradicted in many ways by his own treatment notes, and by records from Kentucky Pain Management Services, which showed some abnormalities but otherwise normal gait and station, normal extremity findings, and negative straight leg raising. *See* [Tr. 60]; [Tr. 362–63, 369, 375, 382–83, 390–91, 396, 413, 422, 424–25, 427–28, 432–33, 435–36, 438–39, 443–44, 448–49, 453–54, 457–58, 469, 487, 492, 495, 502, 509].

Having considered her thorough analysis, the Court finds that substantial evidence supports ALJ Jackson's finding that Dr. Breeding's assessment is unpersuasive. ALJ Jackson complied with the regulations by discussing both the supportability and consistency of the assessment, and she thoroughly considered the objective medical evidence that contradicts many of Dr. Breeding's findings, which she expressly referenced in her opinion. Moreover, it is worth noting that many of Dr. Breeding's proposed limitations come in the form of a "check-box analysis" with a few fill-in-the-blank questions, *see* [Tr. 482–84], which administrative law judges may appropriately afford little weight. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (noting that reports, where the physician's only obligation is to check a box or fill in a blank, are generally weak evidence at best); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir.

11

2016) (recognizing that an ALJ can properly give check-box forms "little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence"). When prompted to explain the medical findings that support his assessments, Dr. Breeding's assessment simply cited to "DDD," "mat," "EMC," and what looks like "nov." [Tr. 483]. ALJ Jackson did not err in finding this assessment—the support for which was largely illegible—unpersuasive, since "[a] case cannot be decided in reliance on a medical opinion without some reasonable support for the opinion." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x. 515, 525 (6th Cir. 2014).

Lastly, Plaintiff appears to argue, somewhat cursorily, that ALJ Jackson erred in finding he has no listing-level impairments. *See* [R. 12-1, p. 9]. Specifically referencing "listing 1.02 major dysfunction of the joints," Plaintiff alleges ALJ Jackson "disregarded a number of medical reports and records in this file which establish the Claimant does in fact suffer from significant limitations" with respect to affective ambulation and fine and gross movement, pointing to Dr. Breeding's 2020 opinion and a May 2020 MRI of his cervical spine. *Id.* It is well settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Even so, Plaintiff's argument also fails on the merits.

Listed impairments are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Reynolds v. Comm's of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011). Because a claimant who meets the requirements of a listed impairment at step three

will be deemed conclusively disabled and entitled to benefits, the burden on the claimant is high.

*Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 421 (E.D. Mich. 2019); *see also Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990). An impairment must satisfy all criteria of a listing to "meet" listing-level; a diagnosis alone is insufficient, and satisfaction of only some criteria is likewise insufficient. 20 C.F.R. § 416.925(d). An impairment may also qualify as disabling if it "medically equals" a listed impairment, meaning it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

> Under Listing § 1.02, Major dysfunction of a joint(s) is:
>
> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02. ALJ Jackson specifically considered whether Plaintiff's impairments met or medically equaled Listing § 1.02 but noted "[n]o treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." [Tr. 56]. ALJ Jackson further noted that, "[a]fter reviewing the evidence, Disability Determination Service (DDS) medical examiners also concluded that no listing is met or equaled." *Id.* As the Commissioner notes, Plaintiff has failed to identify any medical findings that specifically demonstrate gross anatomical deformity involving a weight-bearing joint (i.e., hip, knee, or ankle) or one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), as required to satisfy Listing 1.02A

13

or B. Plaintiff has similarly failed to identify any evidence demonstrating an inability to effectively ambulate or to perform fine and gross movements as defined in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00B(2)(b)(1) and (c).

The regulations define the inability to ambulate effectively as "an extreme limitation of the ability to walk," based on "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s)," such as a walker, two crutches, or two canes, "that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(b)(1). "Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(c). In addition, "[t]he inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(a). ALJ Jackson appropriately found that nothing in the record indicates Plaintiff's functional capabilities are so severely limited. The only evidence upon which Plaintiff relies—the May 2020 MRI of his cervical spine, which shows small disc herniations and bulges, and Dr. Breeding's assessment, which this Court already deemed properly discounted by ALJ Jackson—is insufficient to demonstrate a listing-level impairment. In addition, as the Commissioner notes, even if ALJ Jackson had accepted Dr. Breeding's findings as persuasive, they do not, even alongside the May 2020 MRI, demonstrate a listing-level impairment.

As a closing note, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there might be evidence in the record, including Dr. Breeding's assessment, that could support a contrary conclusion, it is clear ALJ Jackson thoroughly considered all evidence of record, and the Court finds no error in her decision.

IV.    **Order**

14

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

This the 30th day of August, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Copies:        Counsel of Record